

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1753-08

---

### ROSS LAYTON FORD, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### FANNIN COUNTY

---

COCHRAN, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON and HOLCOMB, JJ., joined. KELLER, P.J., KEASLER and HERVEY, JJ., concurred in the result. PRICE, J., filed a concurring opinion in which JOHNSON, J., joined. MEYERS, J., filed a dissenting opinion.

### OPINION

This case concerns a pre-trial suppression hearing in which the trial court relied upon an unsworn police offense report in ruling that the deputy had probable cause to arrest appellant. After the trial court denied his motion to suppress, appellant pled guilty to possession of marihuana. The court of appeals reversed, concluding that the trial court erred in considering the unsworn report; therefore, the State failed to produce any evidence at the suppression hearing to

support appellant's arrest.[1]  The State claims that (1) the court of appeals overturned the trial court's ruling based on an argument appellant did not make in the trial court; and (2) the trial court may base its pre-trial suppression ruling on an unsworn police report.[2]  Although we hold that appellant preserved this issue for appeal, we agree with the State's second contention that, in a pre-trial motion to suppress hearing, a trial court may rely upon any relevant, reliable, and credible information, even though it may be unsworn hearsay.  Therefore, we reverse the judgment of the court of appeals.

## I.

Appellant filed a pre-trial motion to suppress evidence concerning his arrest, alleging that Deputy Halcomb searched his truck without a warrant or probable cause. Appellant testified at the hearing for the limited purpose of showing that his arrest was made without a warrant.  The prosecutor did not cross-examine appellant, and he offered no live testimony.  Instead, the prosecutor offered only Deputy Halcomb's unsigned, undated, and unsworn police report and gave a verbal summary of its contents to support his position that the officer had probable cause to search appellant's truck.  Appellant objected to the admission of the report (1) as a violation of the hearsay rule; (2) because there was no sponsoring witness; and (3) as a violation of his right to confrontation under the Sixth Amendment.  The prosecutor responded that hearsay is admissible in a suppression hearing; a suppression hearing deals only with preliminary issues;

---

[1] *Ford v. State*, 268 S.W.3d 620, 625-26 (Tex. App.—Texarkana 2008).

[2] The State's two grounds for review are

(1)    May a court of appeals decide an issue based on an argument that was not made in the trial court? and

(2)    May a trial court base its ruling on an unsworn police report offered into evidence at a pre-trial suppression hearing?

and the confrontation right attaches only at trial.[3]  The trial judge overruled appellant's objections and admitted the report into evidence.  Based upon the information in that report, he denied appellant's motion to suppress.  The trial judge made findings of fact and conclusions of law, the most important of which reads,

> That the report submitted by Deputy Halcomb and entered into evidence is credible, and the Court accepts as true the submission of his offense report regarding his observations of the defendant and his conversations with the defendant. [4]

Following the denial of his motion to suppress, appellant pled guilty to possession of less than two ounces of marihuana.  The trial judge deferred the adjudication of his guilt and placed him on community supervision for twelve months.

On appeal, appellant argued that the trial judge erred in denying his motion to suppress because the arrest report was inadmissible.  The court of appeals agreed, holding that in a suppression hearing, Texas Code of Criminal Procedure article 28.01, § 1(6), permits the trial court to determine the merits of a motion based on the motion itself, upon competing affidavits, or upon live testimony.[5]  The court of appeals concluded that only those three specific methods are permissible:

> In this case, the State failed to accompany its proffered documentary evidence with either some form of affidavit or live, sponsoring witness testimony.  It is not enough for the State to ignore the requirements of Article 28.01(6), and merely

---

[3] The prosecutor also stated that she had tried to contact Deputy Halcomb, and she would be "just fine" with having him testify if he arrived in time.  The prosecutor noted that "the State does expect Deputy Halcomb to be subpoenaed and would be at trial and will testify to what is in his report," but this hearing was, as the trial judge had stated, simply a hearing "to determine the admissibility of the evidence" that the deputy would testify to at trial.

[4] *Ford*, 268 S.W.3d at 623.

[5] *Id.* at 625.

read a police report to the trial court and then tender it – unsigned, undated, and unverified – as was done here.[6]

Because the arrest report was the only evidence the State offered to establish probable cause to search appellant's truck, the court of appeals concluded that there was no basis for the trial court to deny Appellant's motion to suppress.[7]

II.

First, we address the State's contention that the court of appeals erred by addressing an issue that was neither preserved in the trial court nor raised on appeal. Preservation of error is a systemic requirement on appeal.[8] If an issue has not been preserved for appeal, neither the court of appeals nor this Court should address the merits of that issue.[9] Ordinarily, a court of appeals should review preservation of error on its own motion,[10] but if it does not do so expressly, this Court can and should do so when confronted with a preservation question.[11]

To properly preserve an issue concerning the admission of evidence for appeal, "a party's objection must inform the trial court why or on what basis the otherwise admissible evidence should be excluded."[12] However, a party need not spout "magic words" or recite a specific statute to make a valid objection. References to a rule, statute, or specific case help to clarify an

---

[6] *Id.*

[7] *Id.* at 625-26.

[8] *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).

[9] *See id.* ("Because we have held that preservation of error is a systemic requirement that must be reviewed by the courts of appeals regardless of whether the issue is raised by the parties, our inquiry into whether Haley properly preserved this alleged error is appropriate.").

[10] *See Jones v. State*, 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997).

[11] *Id.*

[12] *Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campbell, J., concurring).

objection that might otherwise be obscure, but an objection is not defective merely because it does not cite a rule, statute, or specific case.[13] As this Court stated in *Lankston v. State*,[14]

> Straightforward communication in plain English will always suffice. . . . [A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.[15]

The objection must merely be sufficiently clear to provide the trial judge and opposing counsel an opportunity to address and, if necessary, correct the purported error.[16]  In making this determination, *Lankston* states that an appellate court should consider the context in which the complaint was made and the parties' understanding of the complaint at the time.[17]

The State contends that appellant's objections to the admission of the arrest report at the suppression hearing were to "hearsay, confrontation and the lack of a sponsoring witness."  The State further claims that these are not the arguments on which the court of appeals based its

---

[13] *See Rivas v. State*, 275 S.W.3d 880, 887 (Tex. Crim. App. 2009).

[14] 827 S.W.2d 907 (Tex. Crim. App. 1992).

[15] *Id*. at 909.

[16] *Reyna v. State,* 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (discussing rule of "party responsibility"); *see* TEX. R. APP. P. 33.1(a)(1)(A) (error is preserved if a complaint is "made to the trial court by a timely request, objection, or motion that state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."); *see also Clarke v. State*, 270 S.W.3d 573, 579-80 (Tex. Crim. App. 2008) (even though complaint was made without specific reference to *Brady*, "counsel's complaint was obviously that the prosecutor had violated the rules of *Brady v. Maryland*," thus, the "complaint to the trial court concerning prosecutorial misconduct was sufficiently specific to make the judge aware of the complaint"); *Mata v. State*, 46 S.W.3d 902, 908 (Tex. Crim. App. 2001).  *Compare Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) ("When the objection is not specific, and the legal basis is *not* obvious, it does not serve the purpose of the contemporaneous-objection rule for an appellate court to reach the merits of a forfeitable issue that is essentially raised for the first time on appeal.").

[17] *Lankston*, 827 S.W.2d at 911.

specific holding–the "unpreserved issue that the document was inadmissible because it was unsworn." The State points out that there are many examples of sworn statements that are hearsay or are not proffered by a competent witness;[18] thus, appellant's objections would have been equally applicable had the report been supported by an affidavit.

Appellant, on the other hand, argues that his objections were specific enough to put the trial judge on notice as to the nature of the complaint. He focuses on the last sentence of his objection: "[T]here's no basis for putting that document into evidence or having any evidence that's not proffered by a competent witness." Appellant argues that the term "competent witness," although not identical to "oral testimony" by a live, sponsoring witness as provided in art. 28.01, § 1(6), put the trial judge on notice of his specific objection.

The exchange between appellant's counsel, the prosecutor, and the judge was as follows:

State:       We do have Deputy Halcomb's Offense Report showing the reason for the stop.

Appellant:   Judge, I would object to it as hearsay. I object to it under Sixth Amendment Confrontation Clause. I object to any evidence.

State:       As to the objection –

Judge:       You're objecting to State's Exhibit 1 [the offense report]?

Appellant:   My objection to any hearsay testimony from the Prosecutor. I object under *Crawford*. I'll object under the Sixth Amendment of the Constitution of the United States. I'll object under the Texas Constitution as to my right to confront and cross-examine witnesses against my client. Object that there's no basis for putting that document into evidence or having any evidence that's not proffered by a competent witness.

---

[18] *See, e.g., Sturgeon v. State*, 106 S.W.3d 81, 87 (Tex. Crim. App. 2003) ("Even if the defendant himself were to reduce the proposed testimony to writing and submit it in an affidavit, such a formality would not make it any less 'hearsay.' Any statement by *anyone* other than the missing witness (the 'declarant' for hearsay purposes), describing what that witness did or would say, would be hearsay.").

Within this context, the question is whether the trial judge and prosecutor understood that appellant was objecting to resolving the motion to suppress based on hearsay information contained in an offense report made by a non-testifying officer. We think that they did. Under the *Lankston* test, the plain meaning of appellant's objection is clear: he was objecting to the police report as hearsay, but also to the fact that it was unaccompanied by any "competent" sponsoring witness testimony or affidavit. Although appellant did not specifically cite art. 28.01, § 1(6), it is clear that he was objecting to the trial judge relying on Deputy Halcomb's report because that officer was neither present to testify to the truth of its contents nor had he previously sworn to its truth by affidavit.

The prosecutor obviously understood appellant's objection because she responded appropriately: Hearsay is admissible in a pre-trial suppression hearing; the Confrontation Clause does not apply to a pre-trial suppression hearing; and a suppression hearing deals only with preliminary issues of the admissibility of evidence, not sworn, cross-examined testimony. The trial judge, in admitting the offense report, verbally agreed that the suppression hearing was simply to determine the admissibility of evidence at a later trial. Under these particular circumstances, we conclude that both the trial judge and the prosecutor understood the legal and factual basis for appellant's objection. We overrule the State's first ground for review and conclude that the court of appeals properly addressed the merits of appellant's claim.

### III.

We turn now to the State's second ground for review: May a trial judge base his pre-trial suppression ruling on the contents of an unsworn police report? In an appropriate situation, he may.

A hearing on a pre-trial motion to suppress is a specific application of Rule 104(a) of the Texas Rules of Evidence.[19] This rule, based on longstanding common-law principles, explicitly states that a trial judge is not bound by the rules of evidence in resolving questions of admissibility of evidence, regardless of whether those questions are determined in a pre-trial hearing or at some time during trial.[20] Both common law principles and Rule 104 provide the

---

[19] TEX. R. EVID. 104(a) ("Questions of Admissibility Generally – Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court…. In making its determination the court is not bound by the rules of evidence except those with respect to privileges."); *see Granados v. State,* 85 S.W.3d 217, 227 (Tex. Crim. App. 2002); *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g) ("A 'motion to suppress' evidence is nothing more than a specialized objection to the admissibility of that evidence."); *see* also GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 29.132 at 214 (2008 Supp.).

[20] *See Granados*, 85 S.W.3d at 226-28. The Advisory Committee's Note to Federal Rule 104(a) quotes Dean McCormick and explains the common-law basis for this distinction between preliminary rulings by the judge in which the rules of evidence do not apply and evidence offered before the jury on the merits of a claim:

> Should the exclusionary law of evidence, "the child of the jury system" in Thayer's phrase, be applied to this hearing before the judge? Sound sense backs the view that it should not, and that the judge should be empowered to hear any relevant evidence, such as affidavits or other reliable hearsay.

FED. R. EVID 104(a), Advisory Committee's Note (quoting EDWARD W. CLEARY, McCORMICK ON EVIDENCE § 53 at 123 n.8 (2d ed. 1972)). Indeed, Dean Wigmore relied upon the common-law distinction between preliminary proceedings and jury trials in stating that

> in all interlocutory proceedings, even when responsory and not *ex parte*, the usual system of rules is ignored, again partly because of the subsidiary and provisional nature of the inquiry, but chiefly because there is no jury, and the rules of evidence are, as rules, traditionally associated with a trial by jury.

1 JOHN HENRY WIGMORE, EVIDENCE § 5 at 14 (1904).

The United States Supreme Court, in the context of the post-trial sentencing stage, noted the important distinction between evidentiary rules applicable to trials before a jury and the common-law principles concerning a judge's discretion to use reliable sources of information to reach a "right result":

> Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations. But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources

trial judge with an important "gatekeeping" role.[21] They ensure that all evidence admitted at trial is relevant, reliable, and admissible under the pertinent legal principles.[22] Although the present case does not deal with expert or scientific evidence, the underlying goal of Rule 104(a) is the

and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law. Out-of-court affidavits have been used frequently, and of course in the smaller communities sentencing judges naturally have in mind their knowledge of the personalities and backgrounds of convicted offenders. . . . [Fed. R. Crim. Proc. 32] provides for consideration by federal judges of reports made by probation officers containing information about a convicted defendant, including such information "as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant[.]"

*Williams v. New York*, 337 U.S. 241, 246 (1949) (footnotes omitted). In these instances, the judge should "not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." *Id.* at 247. The same is true with pretrial rulings on the admissibility of evidence, such as hearings on a motion to suppress.

[21] *See Hernandez v. State*, 116 S.W.3d 26, 31 n.11 (Tex. Crim. App. 2003) (in deciding questions of the admissibility of expert testimony, the trial judge need not follow the rules of evidence, except those relating to privileges, and "may ask questions of the expert witness, request more information, ask for additional briefing, or seek clarification of the scientific state of the art and reliable sources in the particular field.") *also* DIX & DAWSON, *supra* note 19,§ 29.132a at 215 (noting that, although the Rules of Evidence do not apply at a suppression hearing, "the courts retain common law authority to develop procedural rules–including rules for what offered evidence or information should be considered–for the conduct of hearings . . . . Undoubtedly these rules would recognize considerable discretion in the trial judge, to be exercised on the basis of several considerations. How effectively can the other party challenge credibility? How easy would it be for the offering party to obtain evidence permitting better assessment?").

[22] This "gatekeeping" role has been discussed most extensively in cases dealing with the reliability of scientific expertise. The Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 289 (1993), explained that the "gatekeeping" function of the trial judge under FED. R. EVID. 104(a) is to "ensure that any and all scientific testimony is not only relevant, but reliable." Texas courts have followed suit in adopting the "gatekeeping" role of TEX.R. EVID. 104(a). *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d, 549 556 (Tex. 1995) (trial court responsible for ensuring expert testimony is reliable); *Hartman v. State*, 946 S.W.2d 60, 62 (Tex. Crim. App 1997) ("gatekeeper" function assigned to trial judge to ensure that scientific testimony is not only relevant, but reliable as well); *Hartnett v. State*, 38 S.W.3d 650, 657 (Tex. App.—Austin 2000, pet. ref'd) (under Rule 104(a) trial court has discretion to determine if expert witnesses are qualified).

same in a motion to suppress evidence: The trial judge makes a legal ruling to admit or exclude

evidence based upon the relevance and reliability of the factual information submitted by the

parties.[23]   The question in this case, then, is whether the trial judge used sufficiently reliable

information, in the form of the unsworn offense report, when he ruled upon the merits of

appellant's motion to suppress.

The court of appeals's holding turned on its reading of art. 28.01, § 1(6), of the Texas

Rules of Criminal Procedure.  That rule reads as follows:

> (6) Motions to suppress evidence – When a hearing on the motion to suppress
> evidence is granted, the court may determine the merits of said motion on the
> motions themselves, or upon opposing affidavits, or upon oral testimony, subject
> to the discretion of the court.

In *Hicks v. State*,[24] we reiterated our "plain language" approach to statutory analysis:

> In *Boykin v. State,* we held that "'[w]here the statute is clear and unambiguous, the
> Legislature must be understood to mean what it has expressed, and it is not for the
> courts to add or subtract from such a statute.'"   Therefore, when interpreting a
> statute, "we ordinarily give effect to that plain meaning."   But we have
> acknowledged an exception to this rule: "where application of a statute's plain

---

[23] This was true under common-law principles and has been brought forward under Rule 104(a).  *See* MCCORMICK, *supra*, note 20,  § 53 at 123 n.8; *see also Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983) ("Hearsay-upon-hearsay may be utilized to show probable cause as long as the underlying circumstances indicate that there is a substantial basis for crediting the hearsay at each level."). As this Court noted in a post-Rules case, *Johnson v. State*, 803 S.W.2d 272, 284 n.10 (Tex. Crim. App. 1990), article 28.01 and Rule 104 do "impose limits on the purpose and conduct of pre-trial hearings."  *Id.*  This Court quoted Professors Wright and Graham for the proposition that Rule 104(a) read literally would allow the trial judge to make his admissibility determination based upon irrelevant evidence, "even though such a determination might be overturned by an appellate court on the basis of the sufficiency of the evidence to support the finding." *Id.* (quoting C. WRIGHT & K. GRAHAM, 21 FEDERAL PRACTICE AND PROCEDURE § 5055). Obviously, that kind of discretion–basing a preliminary ruling on irrelevant or unreliable evidence–is not what Rule 104(a) contemplates because irrelevant and unreliable evidence is not a sufficient basis to support a preliminary finding–including a finding at a motion to suppress hearing.  *Id.*

[24] 241 S.W.3d 543 (Tex. Crim. App. 2007).

language would lead to absurd consequences that the Legislature could not *possibly* have intended, we should not apply the language literally." "If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous," then it is appropriate to seek the aid of extratextual factors to develop a reasonable interpretation of a statute.[25]

Thus, we must look first to the specific words in art. 28.01 to determine its meaning. The statutory rule states that a motion to suppress "may" be resolved by considering different possible means of acquiring information. The rule does not state that the motion "shall be" or "must be" resolved by these specific means.[26] There is no suggestion in the plain language of the rule that this is an exclusive list.[27] Instead, the statutory language supports the notion that a motion to

---

[25] *Id.* at 545-46 (citations omitted).

[26] In drafting art. 28.01, the Legislature obviously knew the difference in meaning between the terms "may," "must," and "shall," because it used all three terms in the statute, depending upon its purpose. Article 28.01, §1 begins with the phrase, "The court *may* set any criminal case for a pre-trial hearing[.]" That is, the trial court has the discretion to conduct a pre-trial hearing, but it may decline to do so. *See Moore v. State*, 700 S.W.2d 193, 205 (Tex. Crim. App. 1985) (a trial court is not required to conduct a pre-trial hearing, even when it is requested). Conversely, the defendant "must be present at the arraignment." Art. 28.01, § 1. *See Andanadus v. State*, 866 S.W.2d 210, 218 (Tex. Crim. App. 1993). In Section 2, the Legislature stated that "the defendant *shall* have sufficient notice of such hearing to allow him not less than 10 days in which to raise or file such preliminary matters." *See Postell v. State*, 693 S.W.2d 462, 467 n.10 (Tex. Crim. App. 1985) (Clinton, J., concurring) (stating that if the trial judge exercises his discretion to have a pre-trial hearing, "legislative history makes plain that the proviso in § 2 means that the trial court must give an accused sufficient notice of the hearing day to allow him ten days in which to prepare and file his motions and other preliminary matters, and that they must be filed seven days before the hearing to be considered by the trial court unless for good cause shown the trial court grants leave to file thereafter."). In this statute, the Legislature used the term "may" when it intended discretionary acts and procedures, and it used "shall" or "must" when it intended mandatory acts or procedures.

[27] The court of appeals reasoned that the Legislature intended that the three methods specifically mentioned in art. 28.01, § 1(6), be the exclusive means by which to resolve pretrial motions to suppress. *Ford*, 268 S.W.3d at 624 ("to properly conduct a hearing on affidavits, a trial court must admit only evidence that is supported by an affidavit, otherwise the Legislature's effort to specifically denominate that type of hearing becomes merely superfluous."). The court of appeals probably was referring to the statutory construction aid, *expressio unius est exclusion alterius*, which means that the expression of one thing implies the exclusion of other, unexpressed, things. This maxim is "a product of logic and common sense, expressing the

suppress is an informal hearing in which the trial judge, in his discretion, may use different types

of information, conveyed in different ways, to resolve the contested factual or legal issues.[28]  The

---

learning of common experience that when people say one thing they do not mean something else.”  *Williams v. State*, 965 S.W.2d 506, 508 (Tex. Crim. App. 1998).  But the maxim applies only when the statute under consideration is intended to serve as a comprehensive treatment of a topic or when it relates to a specific exception to a general rule.  *See Dallas v. State*, 983 S.W.2d 276, 278 (Tex. Crim. App. 1998) (“‘if statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded’”) (quoting Black’s Law Dictionary 692 (4th ed.1951)).  This statutory construction aid might apply to art. 28.01, § 1(6), if the statute read “shall” or “must,” indicating that the specifically named methods set out in the statute are comprehensive.  But when statutes or rules use the permissive word “may,” that term generally indicates that the specified items are merely examples of the types of topics covered or methods allowed.  *See, e.g., Montgomery v. State,* 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991) (op. on reh’g) (noting that Rule 404(b) states that evidence of other acts of misconduct “may” be admissible for purposes other than character conformity means that the examples listed in the rule are illustrative, not exclusive); *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998) (Rule 901(b) sets out a nonexclusive list of methods for authenticating evidence; those specified methods are illustrative, not exclusive); *see generally, Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (stating that the “canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping;  it has force only when the items expressed are members of an ‘associated group or series,’ justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence”); *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002) (“Just as statutory language suggesting exclusiveness is missing, so is that essential extrastatutory ingredient of an expression-exclusion demonstration, the series of terms from which an omission bespeaks a negative implication.  The canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand, which [is] abridged in circumstances supporting a sensible inference that the term left out must have been meant to be excluded.”).

[28] *See Bishop v. State*, 85 S.W.3d 819, 821-22 (Tex. Crim. App. 2002) (defendant’s unsworn statement in her motion to suppress sufficient to establish the fact that a search of her vehicle was made without a warrant, even though the allegation was not in her sworn affidavit.  Defendant’s unsworn statement consistent with what is allowed in art. 28.01, § 1(6)); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (suppression hearing began with the State stipulating that the case involved a warrantless arrest); *State v. Miller*, 116 S.W.3d 912, 915 (Tex. App.—Austin 2003, no pet.) (The plain language of article 28.01, § 1(6), “unambiguously gives a trial court the discretion to determine the format of a pretrial suppression hearing”; finding nothing in prior cases “to suggest that the court of criminal appeals intended to deny trial courts the discretion to require live testimony at a pretrial suppression hearing.  Those opinions hold that a trial court is *permitted* to determine the merits of a pretrial suppression motion without hearing testimony, not that it is *required* to do so.”).

State argues that the structure and language of the statute points to the conclusion that the legislature intended to give the trial court latitude to hold a "non-traditional, informal hearing that need not necessarily include witnesses, testimony, or even formal evidence."[29]

Appellant argues that the plain language of the statute lends itself to the narrow construction used by the court of appeals. He cautions that a permissive reading of the statute will render it without any real effect and asks us to conclude that the legislature intended the statute to establish a mandatory, not discretionary, procedure for conducting suppression hearings.

Because the legislature carefully used the term "may" throughout art. 28.01 when it intended discretionary acts and procedures and used the terms "must" or "shall" when it intended mandatory acts or procedure,[30] we conclude that the legislature intended to establish a discretionary and informal procedure for the trial court to conduct suppression hearings under art. 28.01, § 1(6). The legislature suggested, but did not require, several different methods to

---

[29] State's Brief at 8 ("We do not believe that the legislature's intent in art. 28.01 §(1)(6) was to dictate what type of evidence may *not* be admitted at a suppression hearing. Instead the statute was intended to give the trial court latitude to hold a non-traditional, informal hearing that need not necessarily included witnesses, testimony, or even formal evidence."). The State also argues that construing the statute as an exclusive list would prohibit reliable evidence, such as a patrol car videotape. "A videotape from a camera mounted to a police officer's car that depicted the entire traffic stop from start to finish might provide the trial court with sufficient information to determine the validity of a traffic stop. But because a videotape is not a motion, affidavit or oral testimony, the Court of Appeals' construction of the statute would not all allow the hearing to be 'determined on' the videotape." *Id.* at 9. *See Carmouche v. State,* 10 S.W.3d 323, 331-33 (Tex. Crim. App 2000) (holding that a videotape of an arrest that contradicted officer's testimony at a suppression hearing was sufficient for trial court to discount the officer's testimony). Also, as the State suggests, the trial judge may resolve a motion to suppress hearing on agreed facts when only the legal significance of those facts are disputed. Surely, it is in no one's interest to require the submission of affidavits or oral testimony when both parties agree on the relevant facts.

[30] *See* note 21, *supra.*

determine the merits of a motion to suppress, including information and facts set out in the motion itself, affidavits, or oral testimony. In sum, under the *Boykin* "plain language" analysis, we conclude that art. 28.01 means what it says when it uses the permissive term "may": A trial judge may use his discretion in deciding what type of information he considers appropriate and reliable in making his pre-trial ruling.[31] We conclude that the trial judge did not abuse his discretion in relying upon an unsworn hearsay document.[32] Deputy Halcomb's offense report could have been, but was not required to be, accompanied by an affidavit stating that "this is a true and accurate copy of my offense report."

Finally, we must determine whether the trial court abused his discretion by relying upon this particular unsworn hearsay document. If the source and content of the hearsay document were unreliable, then the trial court did not adequately perform his "gatekeeper" function. In this case, we conclude that Officer Halcomb's offense report contains sufficient indicia of reliability to serve as the factual basis for the trial court's ruling. The offense report includes appellant's name, correct offense date, and specific information that coincides with the same basic

---

[31] *See, e.g., United States v. Shaefer*, 87 F.3d 562, 570 (1st Cir. 1990) ("a judge presiding at a suppression hearing may receive and consider any relevant evidence, including affidavits and unsworn documents that bear indicia of reliability"; stating that "the government effected a prima facie showing of consent [to search] by placing a copy of the police report before the court."); *United States v. Tussell*, 441 F. Supp. 1092, 1097 (D.C. Pa. 1977) (trial judge stated that he allowed consideration of hearsay and unauthenticated documents "for whatever probative value" that evidence had during suppression hearing; "This is permissible at a suppression hearing without regard to the matter in issue, although the court remains obligated to weigh the evidence and discount that which is less reliable.").

[32] *See, e.g., Vanmeter v. State*, 165 S.W.3d 68, 69-70 (Tex. App.—Dallas 2005, pet. ref'd) (in making suppression hearing determination trial judge may rely upon patrol car videotape and various DPS documents, including offense reports); *Macklin v. State*, 861 S.W.2d 39, 42 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (trial court could consider hearsay police report in making a preliminary determination of admissibility under rule 104(a)).

information to which appellant testified at the hearing.[33]  Furthermore, it is a criminal offense to file a false police report.[34]  Although the trial judge was clearly not required to believe the information contained within Deputy Halcomb's report, the document itself is a government record and of a type that a trial judge may consider reliable in a motion to suppress hearing,[35] even though it is hearsay and is not admissible at a criminal trial on the merits.[36]

In *United States v. Matlock*, the Supreme Court held that in a suppression hearing "the judge should receive the evidence and give it such weight as his judgment and experience counsel."[37]  And if there is nothing in the record to "raise serious doubts about the truthfulness of the statements themselves," then there is "no apparent reason for the judge to distrust the evidence."[38]  Several federal cases have also held that a trial court may rely upon unsworn documentary evidence in a motion to suppress hearing.[39]

---

[33] Although the offense report is itself undated, it does contain a dated fax header: "From: Fannin County Sheriff's Office Fax No. _____."

[34] TEX. PENAL CODE § 37.10 (Tampering with Governmental Record); TEX. PENAL CODE § 37.09 (Tampering With or Fabricating Physical Evidence); *see generally De La Paz v. State*, 279 S.W.3d 336 (Tex. Crim. App. 2009) (upholding police officer's conviction for tampering with or fabricating physical evidence by filing a false offense report); *Wingo v. State*, 143 S.W.3d 178, 187 (Tex. App.—San Antonio 2004) (upholding police officer's conviction for tampering with a government record for filing a false incident report), *aff'd*, 189 S.W.3d 270 (Tex. Crim. App. 2006).

[35] *See United States v. Sanchez*, 555 F.3d 910, 922 (10th Cir.) (rejecting defendant's claim that trial judge should not have relied so heavily on hearsay-filled offense report in motion to suppress hearing), *cert. denied*, 129 S.Ct. 1657 (2009).

[36] TEX. R. EVID. 803(8) and 803(6).

[37] *United States v. Matlock*, 415 U.S. 164, 175 (1974).

[38] *Id.* at 175-76.

[39] *See, e.g.*, *United States v. Stevenson,* 396 F.3d 538, 541-43 (4th Cir. 2005) (at a motion to suppress hearing, trial judge could rely primarily upon letter written by defendant to his girlfriend regarding his intention to relinquish his interest in the apartment); *United States v. Bolin*, 514 F.2d 554, 557 (7th Cir. 1975) (trial court could consider documentary evidence of completed customs form at motion to suppress even though it was hearsay); *United States v. Barnes*, 443 F. Supp. 137, 139 n.2 (S.D.N.Y. 1977) ("Although the records [of testimony from a

Art. 28.01, § 1(6), comports with *Matlock*. The trial court *may* conduct the hearing based on motions, affidavits or testimony, but there is nothing in the statute to indicate that it *must*. It is merely an indication that such hearings are informal and need not be full-blown adversary hearings conducted in accord with the rules of evidence.

Significantly, appellant did not argue that Deputy Halcomb's offense report was, in any way, unauthentic, inaccurate, unreliable, or lacking in credibility. Appellant did not contest the accuracy of the facts within that offense report; he argued only that the report could not be considered without the shepherding wings of a sponsoring witness or affidavit. Had appellant complained about the reliability, accuracy, or sufficiency of the information supporting the trial judge's ultimate ruling on the motion to suppress, this would be a very different case.[40] The prosecutor was perfectly willing to sponsor Deputy Halcomb's testimony if he arrived in time for the hearing, but the trial judge, hearing no complaint about the accuracy of the report, did not

---

prior motion to suppress hearing in state court] presented to the [federal] court are neither certified as correct nor sworn to be correct by a witness who has compared them with the originals, see Rule 1005, Fed. R. Evid., no issue has been raised as to their authenticity and there is consequently no reason not to admit them.").

[40] Judge Meyers, in his dissenting opinion, makes an excellent argument concerning whether Deputy Halcomb had probable cause to search appellant's car. Unfortunately, appellant never appealed the issue of whether the facts contained in Deputy Halcomb's report established probable cause. His sole issue on appeal was:

> The Trial Court erred in denying the Motion to Suppress as there was no evidence or insufficient evidence offered by the State of Texas to support the warrantless search of Appellant's vehicle; such alleged evidence being the inadmissible arrest report.

Appellant's brief was devoted entirely to the form of the evidence submitted at the hearing, not to the underlying facts of the search. Neither at the motion-to-suppress hearing, nor on appeal, has appellant claimed that the facts set out in Deputy Halcomb's report were either inaccurate or insufficient to establish probable cause to search.

Appealing though it may be, we ought not remand the case to the court of appeals on a claim that was never raised on appeal and never mentioned at the hearing on the motion to suppress.

wait. He was prepared to rule on the motion based on the deputy's offense report. Although it is better practice to produce the witness or attach the documentary evidence to an affidavit, art. 28.01, § 1(6), did not create a "best evidence" rule that mandates such a procedure in a motion to suppress hearing. Thus, we cannot say that the trial judge abused his discretion in considering and relying upon Deputy Halcomb's offense report, which he found, in the absence of any objection to its specific contents, to be credible and reliable.[41]

The Court of Appeals was mistaken in concluding that art. 28.01, § 1(6), mandates that all information considered by a trial judge must be accompanied by affidavit or testimony. Accordingly, we reverse the judgment of the court of appeals and affirm the trial court's judgment.

Delivered: October 21, 2009

Publish

---

[41] Appellant did not, either in the trial court, or on appeal, challenge the trial judge's factual findings or his credibility determination.